AO 91 (Rev. 11/11)

# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee

FILED
JAN 20 2021
Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

In the Matter of the Extradition of
Matjaz FERK,
also known as Matt Ferk

Case No. 1:21-mj-6

## COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  at least October 2, 2016, to present  in the county of  Hamilton  in the  Eastern  District of  Tennessee , the person named above:

| Code Section | Description |
|---|---|
| 18 U.S.C. § 3184 | Being a fugitive from the Republic of Slovenia, which has sought FERK's arrest with a view toward extradition from the United States, pursuant to the extradition treaty between the United States and Slovenia, 18 U.S.C. § 3184, for commiting commercial fraud and tax evasion in violation of the criminal laws of Slovenia |

This complaint is based on these facts:
Please see the attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Jay Woods, Assistant United States Attorney
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 01/20/2021

*Judge's signature*

City and state:  Chattanooga, Tennessee

Christopher H. Steger, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT of TENNESSEE
at CHATTANOOGA

IN THE MATTER OF THE )
EXTRADITION OF ) **1:21-mj-6**
MATJAZ FERK, )
also known as Matt Ferk ) **Magistrate Judge Steger**

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT
(18 U.S.C. § 3184)

I, Jay Woods, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

*Introduction*

An extradition treaty is in force between the United States and the Republic of Slovenia (the "requesting state"). *See* Treaty between the United States and Servia[1] for the mutual extradition of fugitives from justice, Oct. 25, 1901, 32 Stat. 1890 (the "1901 Treaty," which applies to Slovenia as a successor state), *and* Agreement between the Government of the United States of America and the Government of the Republic of Slovenia comprising the Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003, U.S.-Slovenia, Oct. 17, 2005, S. TREATY DOC. NO. 109-14 *with* Annex, which reflects the integrated text of the provisions of the 1901 Treaty and the U.S.-EU Extradition Agreement[2] (collectively, the "Treaty"). In this matter, I act on behalf of the United States in fulfilling its treaty obligations to the requesting state, and I present

---

[1] As it appears in the original. "At the time the treaty was drafted, 'Serbia' was translated with the spelling 'Servia.'" *Nezirovic v. Holt*, 779 F.3d 233, 236 n.1 (4th Cir. 2015).
[2] Available at https://www.congress.gov/109/cdoc/tdoc14/CDOC-109tdoc14.pdf.

this statement following a review of documents supplied to me by the Office of International Affairs, United States Department of Justice. These documents include a declaration from the Department of State with attachments, including a copy of the diplomatic notes from the requesting state; a copy of the Treaty; and the certified documents submitted in support of the request (marked collectively as Exhibit 1, filed with this complaint, and incorporated by reference herein).

Pursuant to the Treaty, the Republic of Slovenia has submitted a formal request through diplomatic channels for the extradition of Matjaz FERK, also known as Matt Ferk (hereinafter, "FERK"), from the United States to Slovenia. According to the documents provided by the requesting state:

a. An October 8, 2013, indictment[3] in the District Court in Maribor charges FERK with business fraud, in violation of Article 234.a of the Criminal Code of Slovenia ("Fraud Scheme 1").

b. On April 10, 2014, the District Court in Murska Sobota convicted FERK of business fraud, in violation of Paragraph 2, in connection with Paragraph 1, of Article 228 of the Criminal Code of Slovenia, and sentenced him to one year in prison ("Fraud Scheme 2"). Appeals courts twice affirmed FERK's conviction and sentence: the Maribor Higher Court affirmed the judgment on March 18, 2015, and the Supreme Court of the Republic of Slovenia affirmed the judgment on April 14, 2016.[4]

c. A December 17, 2014, indictment in the District Court in Maribor charges FERK with tax evasion, in violation of Article 249 of the Criminal Code of Slovenia (the "Tax Evasion Scheme").

---

[3] Though the documents referenced herein as "indictments" do not bear the title *Indictment*, the form and purpose of these formal accusations is consistent with an indictment in the courts of the United States.

[4] Although FERK failed to appear for trial despite being summoned, he was represented by counsel throughout the trial and appellate proceedings.

According to the information provided by the requesting state, the indictments (and the conviction for Fraud Scheme 2) are based upon the following facts:

*Fraud Scheme 1*

FERK was a director of a company called PALAS. On August 30, 2006, PALAS entered a factoring[5] agreement with victim company PRVI FAKTOR ("Victim-1"). Per the agreement, PALAS would sell and assign to Victim-1 the right to collect debts from PALAS's debtors when the obligations became due. In exchange, Victim-1 would pay PALAS a purchase price for each of the debts. The agreement required PALAS to notify its debtors that PALAS was assigning their debts to Victim-1 and to provide certain documentation to Victim-1, including a copy of the invoice underlying the claim and a signed debtor's statement reflecting that the debtor accepted the assignment.

Beginning in April 2007, FERK fraudulently assigned PALAS's purported interest in collecting approximately eighteen nonexistent debts from various companies (namely, Kraški zidar; Konstruktor VGR; Naravni Park Terme 3000, Moravske Toplice; PSK OLMO; Sortima; SGP Pomgrad-gradnje; Granit; ENERGOPLAN; Gradbeno podjetje Radlje; LIPA Lenart; MTB; and MARC, gradbeno podjetje (collectively, the "Purported Debtor Companies")) to Victim-1. The business records of PALAS, of Victim-1, and of the Purported Debtor Companies reflect that FERK used forged signatures and fake documents (bearing fake stamps, fake invoice numbers, and/or fake debtors' statements) to cause Victim-1 damages of approximately €621,645.76[6] in

---

[5] "The buying of accounts receivable at a discount. • The price is discounted because the factor (who buys them) assumes the risk of delay in collection and loss on the accounts receivable." *Factoring*, Black's Law Dictionary (11th ed. 2019).

[6] $755,548.26 USD, per https://www.bloomberg.com/quote/EURUSD:CUR, accessed on January 11, 2021. Victim-1 offset some of the claims sold to it by PALAS with debt owed to Victim-1 by PALAS. In addition, Victim-1 paid commissions for the debt purchased from

exchange for the supposed rights to collect these nonexistent debts. FERK knew that the claims to the debts did not exist and were based on forged documents. Accordingly, FERK did not send notices of the assignment of claims to the Purported Debtor Companies. Specifically, on or about the dates listed below, FERK fraudulently assigned to Victim-1 the right to collect nonexistent debts, approximately listed below, from the named debtor company knowing that the claims did not exist and were founded on forged documents. In each instance, FERK presented to Victim-1 a forged notice of assignation and a fraudulent debtor's statement bearing a counterfeit stamp and signature.

| Approximate Date of Offense | Purported Debtor Company | Purported Debt Amount, in Euros | Purchase Price, in Euros (Damages, Victim-1) |
|---|---|---|---|
| August 2007 | Kraški zidar[7] | 49,744.39 | 44,004.00 |
| September 2007 | Konstruktor VGR | 81,000.00 | 71,684.40 |
| September 2007 | Naravni Park Terme 3000, Moravske Toplice | 43,386.24 | 38,373.66 |
| October 2007 | Naravni Park Terme 3000, Moravske Toplice | 27,602.40 | 24,461.73 |
| September 2007 | PSK OLMO | 37,236.00 | 29,709.81 |
| October 2007 | PSK OLMO | 39,804.00 | 31,762.16 |
| October 2007 | Sortima | 21,632.22 | 19,160.21 |
| October 2007 | Sortima | 22,281.98 | 19,727.20 |
| October 2007 | SGP Pomgrad-gradnje[8] | 27,098.15 | 23,948.93 |
| September 2007 | Granit | 28,152.00 | 24,882.21 |
| October 2007 | Granit | 19,320.00 | 17,106.96 |
| October 2007 | Granit[9] | 15,619.56 | 13,820.97 |
| October 2007 | ENERGOPLAN | 73,219.86 | 64,970.04 |
| October 2007 | Gradbeno podjetje Radlje | 19,888.12 | 17,611.45 |
| October 2007 | LIPA Lenart | 32,793.60 | 24,170.48 |
| December 2007 | LIPA Lenart | 20,908.80 | 18,517.81 |
| December 2007 | MTB | 91,493.22 | 81,196.78 |
| October 2007 | MARC, gradbeno podjetje | 27,098.15 | 24,783.14 |

---

PALAS. The total damages include the unrecovered purchase price, the value of the offsets, and the commissions.
[7] Kraški zidar paid the original invoice to PALAS and never agreed to an assignment of the claim.
[8] PALAS sold this claim to another entity after it transferred the rights to Victim-1.
[9] This debt appears to have existed in some form, but FERK falsified the notice of assignation.

During the investigation, FERK admitted that he had forged the invoices and the notices of assignment of claim. FERK also asserted that he used the money he obtained from Victim-1 to repay outstanding loans to the mafia. FERK explained that, in 1994, his parents' companies collapsed, leaving him with over a million Mark in debt. In 1995, he became a sole proprietor and opened twelve retail footwear shops, but, after a particularly poor business decision, he went bankrupt in 2003 and took loans from the mafia at 5% to 10% monthly interest, which resulted in his incurring a debt of €800,000.00. The mafia beat and threatened him, and, according to FERK, the pressure from the mafia escalated in 2007. FERK stated that he defrauded Victim-1 to obtain money to repay the mafia. FERK endeavored to explain his situation to Victim-1 and told Victim-1 that he would return the fraud proceeds, and they entered into a repayment plan. Though FERK made some payments to Victim-1, PALAS went bankrupt in 2008, and FERK still owed Victim-1 the debt exceeding €600,000.00.

According to records and employees of Victim-1: Victim-1 discovered the fraud in early 2008, when it tried to recover on the purported debts. At a meeting with Victim-1, FERK acknowledged that he had forged the invoices and accompanying documents. Thereafter, FERK and Victim-1 had additional meetings, and FERK promised to compensate Victim-1. That is, on January 16, 2008, FERK promised to repay Victim-1 for the loss that resulted from the fraud, and he signed an agreement to reimburse Victim-1's loss by December 31, 2009. FERK did not fully reimburse the loss, however, and on December 16, 2010, Victim-1 filed a criminal complaint. The receiver in PALAS's bankruptcy noted that Victim-1 received partial repayment of €14,000.00 from PALAS's bankruptcy proceedings, which concluded in February 2013. An indictment dated October 8, 2013, charged FERK with business fraud, based on the facts presented above and other information contained in the attached Exhibit. On or about March 21, 2014, the District Court in

Maribor ordered pretrial detention for FERK and, on or about March 28, 2014, it issued an international arrest warrant against FERK.

*Fraud Scheme 2*

From in or about the beginning of 2009 through March 18, 2010, FERK, who was the director and sole shareholder of two companies, PALAS and KERADOM, fraudulently stated to the representatives of victim company PTB Marton ("Victim-2"), that (1) KERADOM would settle PALAS's past-due invoices dated February 2008 through October 2009 for construction materials Victim-2 provided to PALAS, totaling approximately €45,040.02; and (2) KERADOM would pay new invoices dated October 2009 through March 2010 for construction materials Victim-2 provided to KERADOM, totaling approximately €20,458.72. Victim-2 relied upon these misrepresentations and agreed, to its detriment, to provide the additional construction materials, resulting in a loss of approximately €60,280.28 (representing approximately €45,040.02 from the failure to pay PALAS's invoices and an additional €15,240.26 from new, unpaid KERADOM invoices). The requesting state alleged that FERK, at the time he made these representations, had no intention of settling the invoices, as evidenced by the fact his companies were in financial distress and, at various relevant points, had their transaction accounts frozen, and that FERK was aware that his companies lacked the financial capacity to pay the invoices.

Based on the facts—those summarized above and in the documents submitted by the requesting state—an indictment charged FERK with business fraud. Following a seven-day trial, the District Court in Murska Sobota found FERK guilty on April 10, 2014.

In finding FERK guilty, the Slovenian court cited and summarized evidence including (1) testimony from Ladislav Marton, director of Victim-2 ("Marton"); Boris Balantič, procurator of Victim-2 (Balantič); and Peter Potočnik, the commercial manager of PALAS and KERADOM

(Potočnik), who confirmed that FERK made the promises to pay; (2) FERK's statements; (3) records for PALAS and KERADOM, including balance sheets and judicial, bank, and business records; (4) business records from Victim-2, including the invoices to PALAS and KERADOM; and (5) expert testimony concerning the financial welfare of FERK's companies. Based on the evidence, the trial court made findings, including the following:

    a.    Between approximately February 2008 and March 2010, Victim-2 provided PALAS and, subsequently, KERADOM with construction materials based on oral agreements and purchase orders. In early 2009, FERK met with Marton to discuss the problem that PALAS was not paying its invoices, and FERK promised to pay PALAS's debts. In reliance on this promise, Victim-2 continued to provide PALAS with construction materials. Invoices from February 18, 2008, through October 1, 2009, reflect that Victim-2 supplied PALAS with €97,479.84 in construction materials. Of this amount, €45,040.02 was not paid.

    b.    In April 2009, FERK established KERADOM, which continued PALAS's operations. In the fall of 2009, FERK met with Marton, Balantič, and Potočnik. The group discussed that, going forward, Victim-2 would do business with KERADOM, instead of PALAS, and FERK promised to settle the debts of both companies. In reliance on FERK's promises, Victim-2 supplied KERADOM with €20,458.72 in construction materials between approximately October 27, 2009, and March 18, 2009. Of this amount, €15,240.26 was not paid. On March 10, 2010, FERK signed an agreement to settle PALAS's claim in the amount of €45,040.02 within sixty days and KERADOM's then-outstanding claim in the amount of €14,936.54 by April 5, 2010 (excluding the debt that later arose by virtue of a March 18, 2010, invoice).

Investigating officials reported that, before the trial, FERK denied defrauding Victim-2 and said that he always intended to pay with money that other companies owed him. FERK conceded,

Page 7 of 11
Case 1:21-mj-00006-CHS   Document 3   Filed 01/20/21   Page 8 of 12   PageID #: 11

however, that he founded KERADOM to help him survive, because PALAS was "at a standstill." FERK stated that he transferred PALAS employees to KERADOM that he otherwise would have had to dismiss. FERK acknowledged that, because he owned KERADOM fully, he knew from the beginning that he would need to settle PALAS's debts. FERK stated that KERADOM encountered difficulties after some success, and it collapsed financially. He explained that employees he transferred from PALAS were no longer willing to work, that KERADOM was having difficulties paying for material, and that KERADOM had to pay a penalty to its client when it failed to complete a project in Austria. He stated that PALAS's creditors pursued KERADOM, which resulted in the tax administration and other creditors seizing his entire ownership share in KERADOM and the tax administration having KERADOM deleted from the register of companies. In addition, FERK declared that the tax administration seized PALAS's entire inventory. FERK also agreed that, while KERADOM was still operational, he had promised to pay the debt to Victim-2 with materials, and stated that, after KERADOM collapsed, he again promised to pay the debt once a project he began in 2010 involving rebate money cards reached a certain maturity.

Records from the Agency of the Republic of Slovenia for Public Legal Records and Related Services confirmed that PALAS's transaction accounts had, in fact, been frozen in late 2008: PALAS's account at Nova KBM was frozen from October 17, 2008, through October 26, 2009, and its account at SKB Banka was frozen from October 21, 2008, through January 26, 2009, and again from February 3, 2009, through June 23, 2009. Financial expert Alenka Gril stated that, beginning in October 2008, PALAS's assets and inflows were insufficient to settle its liabilities. A report from the Tax Administration of Slovenia further reflected that, on June 9, 2009, it seized PALAS's inventory. According to both FERK and expert financial testimony, PALAS was no

longer operational by October 9, 2009. On October 1, 2010, bankruptcy proceedings commenced against PALAS.

Additionally, account records disclosed that KERADOM's transaction account at NLB Banka was frozen from February 10–22, 2010; March 12–22, 2010; and April 13, 2010, through August 23, 2010. On January 26, 2011, the District Court in Maribor ordered that KERADOM be deleted from the judicial record without liquidation, following an action commenced on November 11, 2010. The court determined that, in 2010, KERADOM's financial situation was poor, and the company had insufficient inflows to its transaction account to settle its liabilities.

The trial court found that FERK was aware of these financial difficulties and knew, when he made the promises to Victim-2, that he would not be able to make the payments; therefore, FERK committed the offense intentionally. Upon this conviction and after considering the nature and gravity of FERK's offense, the District Court in Murska Sobota sentenced FERK to one year in prison, the bottom of the statutory range. FERK's counsel, acting on his behalf, appealed; the Maribor Higher Court affirmed FERK's conviction and sentence on March 18, 2015, and the Supreme Court of the Republic of Slovenia affirmed on April 14, 2016. FERK was scheduled to begin serving his sentence on January 11, 2016. When FERK failed to appear, the District Court in Murska Sobota issued an international arrest warrant for FERK on August 23, 2016.

*Tax Evasion Scheme*

Requesting state officials also allege that, on or about January 29, 2010, FERK, as the director of KERADOM, submitted to the Tax Administration of Maribor, Slovenia, an assessment of Value Added Tax ("VAT") for the month of December 2009 with false data on expenditures and on the value of the excused deduction of VAT for a particular invoice. Specifically, the invoice, dated December 24, 2009, from the company FERJAN for the construction of residential

homes, showed tax-deductible expenses of €254,029.80 and a VAT deduction €50,984.16. However, FERK knew that the services the invoice specified had not been performed and that the VAT had not been paid. As a result, KERADOM partly evaded payment of VAT of about €50,984.16.

FERK's co-defendant in the tax evasion case, who was the director of FERJAN, admitted to the tax inspector that the services the invoice specified were not actually performed. Despite the request of the Tax Authority of the Republic of Slovenia, Tax Office Maribor, FERK did not submit business books or documentation, nor did he provide explanation for his lack of cooperation during the tax inspection. The tax inspector composed minutes of the findings of the tax investigation and sent them to FERK, who did not object to the minutes. Thereafter, prosecutors filed an indictment on December 17, 2014, charging FERK with tax evasion, and they resumed that prosecution on April 24, 2020, which prompted a second filing of the indictment on May 5, 2020. On May 26, 2020, the District Court in Maribor ordered FERK arrested and detained on the tax evasion offense. As grounds, the court concluded that FERK "is in hiding and evading criminal proceedings." Counsel for FERK appealed the order of detention, and, on June 4, 2020, the Maribor Higher Court dismissed the appeal as unfounded.[10]

*Extradition*

Upon an investigation by United States law enforcement, FERK was found living in Hamilton County, Tennessee, within the jurisdiction of this Court.[11]

Tom Heinemann, an attorney in the Office of the Legal Adviser of the United States Department of State, has provided the Department of Justice with a declaration authenticating copies of the diplomatic notes by which the request for extradition was made, a copy of the Treaty

---

[10] The court mistakenly determined that FERK was in custody in the United States pending deportation.
[11] The proposed arrest warrant lists a residential address believed to be FERK's.

Page 10 of 11

Case 1:21-mj-00006-CHS  Document 3  Filed 01/20/21  Page 11 of 12  PageID #: 14

showing that the Treaty covers the offenses for which extradition is sought, and declaration confirming that the documents supporting the request for extradition bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the requesting state, in accordance with Article 3 of the Treaty, so as to enable them to be received into evidence.

FERK likely will flee if he learns of the existence of a warrant for his arrest.

WHEREFORE, I, the undersigned, request that a warrant for FERK's arrest issue in accordance with the Treaty and Title 18, United States Code, Section 3184, so that the fugitive may be arrested and brought before this Court "to the end that the evidence of criminality may be heard and considered." I further request that this complaint, the attached exhibit, and the warrant be placed under the seal of the Court until such time as the warrant is executed.

Respectfully submitted, this the 20th day of January 2021.

J. DOUGLAS OVERBEY
United States Attorney

By: _____
Jay Woods, TN BPR 021768
Assistant United States Attorney
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
Jay.Woods@usdoj.gov
(423) 752-5140

Sworn to before me and subscribed in my presence this 20th day of January 2021 at Chattanooga, Tennessee.

_____
Christopher H. Steger
United States Magistrate Judge